# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 3, 2011

No. 09-10938

Lyle W. Cayce
Clerk

ROBERT ALLEN RABE,

Petitioner-Appellant

v.

RICK THALER, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

WIENER, Circuit Judge:

Petitioner-Appellant Robert Allen Rabe was convicted in state court of
aggravated robbery with a deadly weapon. He filed a state post-conviction
petition based on the alleged ineffective assistance of his court-appointed trial
counsel, which was denied. He then filed a federal habeas application and
expanded the record to include new evidence. The district court held an
evidentiary hearing at which new witnesses testified, then denied habeas relief.
On appeal, our review is limited to whether Rabe's trial counsel was ineffective
for failing to subpoena or secure the presence of Rabe's alibi witness, Jesse Diaz,

No. 09-10938

at trial. In light of the Supreme Court's recent holding in *Cullen v. Pinholster*,[1] which restricts our review in these cases strictly to the contents of the state-court record, we conclude that the state court reasonably determined that Rabe's assistance of counsel was not ineffective and affirm the district court's denial of habeas relief.

## I.  FACTS & PROCEEDINGS

At approximately 2:00 p.m., three individuals entered a liquor store and robbed the store clerk at gunpoint. During a six-person photo lineup and again at trial, the clerk identified Rabe as one of those individuals. According to the clerk's testimony at trial, he specifically focused his attention on Rabe during the robbery because Rabe was the one who had a gun pointed at the clerk's chest. At trial, the clerk conceded that during the photo lineup, he had been unsure whether he had identified the right person, but in the courtroom he was "absolutely positive" that defendant Rabe was one of the men who had robbed the store. The robbery was also recorded on a video surveillance camera, and the videotape, though grainy, was admitted into evidence and shown to the jury.

Rabe's alibi was that, at the time of the robbery, he was working with Jesse Diaz on an air conditioner for Vincent Avalos at Avalos's house. Rabe alleges that before trial he gave his court-appointed attorney, Michael Smith, the names of Avalos, Avalos's wife, and Diaz as potential alibi witnesses, but that Smith did contact any of them to testify at trial.

A jury convicted Rabe of aggravated robbery with a deadly weapon. After the conviction, but before sentencing, Rabe's sister watched the surveillance video and noticed that the suspect alleged to be Rabe—who has tattoos on both of his arms—did not appear to have tattoos. Smith then raised this issue at sentencing, but Rabe was nevertheless sentenced to forty-eight years in prison,

---

[1] 131 S. Ct. 1388 (2011).

No. 09-10938

calculated in part by enhancements for two prior felony convictions. Rabe's conviction and sentence were affirmed on appeal.

Rabe filed a state post-conviction petition in which he alleged that Smith had provided ineffective assistance of counsel. Smith submitted an affidavit in response to Rabe's allegations, which the court attached to its findings of fact and conclusions of law in denying Rabe's petition. The state trial court concluded:

> While counsel admits to some errors, this Court does not find the errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Applicant has not proven that counsel's omissions or mistakes raise a reasonable probability that the outcome of the trial would be different but for the errors. Nor does this Court find that the minimally deficient purpose prejudiced him by depriving him of a fair trial.

A state appeals court affirmed, and the Texas Court of Criminal Appeals denied relief without written order based on the findings of the trial court.

Rabe then filed a federal habeas application asserting as his sole ground of relief that he had received ineffective assistance of counsel[2] because Smith: (1) did not subpoena three alibi witnesses, including Diaz; and (2) failed to investigate or present evidence that the suspect in the surveillance video, alleged to be Rabe, did not have tattoos on his arms as does Rabe.

As the district court was troubled by the state court's failure to address Smith's concession that he "probably dropped the ball" for not sooner discovering the "tattoo defense," it scheduled an evidentiary hearing to explore the factual basis of Rabe's claim of ineffective assistance of counsel. At the evidentiary hearing, Avalos and his wife testified that they had hired Rabe to fix their air conditioner and paid him the day following the robbery, which they would not

[2] Rabe first filed a pro se application asserting eleven claims. Thereafter, however, counsel was appointed and he filed an amended application asserting only this single ground for relief.

3

have done had the work not been completed. Neither of them could confirm, however, that Rabe was at their house at the time of the robbery. They also testified that they were not contacted by Smith or asked to testify at Rabe's trial. In addition, Rabe expanded the record to include an affidavit from Diaz in which he stated that on the day of the robbery, he had worked with Rabe from 11:00 a.m. until 5:30 p.m. Diaz also testified that he had never been contacted by Smith. A letter from Diaz to Rabe was added to the record, however, in which Diaz explained that he *was* subpoenaed by Smith but was confused about the date of the trial and left for a job on the day of trial.

After the evidentiary hearing, the magistrate judge who had conducted it entered findings and recommended that the district court deny Rabe's habeas application. The magistrate judge noted his concern that, because Rabe had made no attempt to introduce this evidence or obtain statements from these witnesses at the state habeas proceedings, "it is doubtful whether a federal court even has discretion to conduct an evidentiary hearing." Nevertheless, the magistrate judge considered the evidence in the federal record and concluded that Rabe had failed to show: (1) "how the testimony of [Avalos and his wife] would have been helpful to the defense," and (2) "that Diaz was both available and willing to testify at his trial." In addition, the magistrate judge noted that the surveillance video was "of poor quality" and only showed the top of the suspect's forearms, which was inconclusive, given that Rabe's tattoos are on the *underside* of his forearms and his biceps. The magistrate judge recommended denial of Rabe's application, and the district court adopted the findings and the recommendation of the magistrate judge. Rabe timely filed a notice of appeal, and the district court denied a certificate of appealability (COA).

Rabe then applied for a COA in this court, which we granted. We limited our review to Rabe's claim "that counsel was ineffective for failing to subpoena and/or secure the presence of Jesse Diaz as a witness during Rabe's trial . . .

No. 09-10938

including whether the district court should have called Diaz to testify at an evidentiary hearing on that claim."

## II. ANALYSIS

### A.    Standard of Review

On appeal from the district court's denial of Rabe's federal habeas application, we review that court's findings of fact for clear error and its conclusions of law de novo, applying the same standard of review to the state court's decision that the district court applied.[3] Because Rabe filed his federal habeas application after 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to his claims.[4] Pursuant to the AEDPA, we may grant habeas corpus relief to Rabe only if the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[5]

In addition, the AEDPA instructs that "a determination of a factual issue made by a State court shall be presumed to be correct."[6]

### B.    We May Only Consider the Evidence in the State-Court Record

Earlier this year, the Supreme Court held, in *Cullen v. Pinholster*, that federal review of a state prisoner's habeas claim is "limited to the record that

---

[3] *Robertson v. Cain*, 324 F.3d 297, 301 (5th Cir. 2003).

[4] *Lindh v. Murphy*, 521 U.S. 320, 324-26 (1997).

[5] 28 U.S.C. § 2254(d).

[6] *Id.* § 2254(e)(1).

was before the state court that adjudicated the claim on the merits."[7] The Court went on to explain that "evidence introduced in federal court *has no bearing* on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."[8]

In our review of Rabe's habeas application, therefore, we may not consider any of the evidence presented for the first time in federal court. That evidence included: (1) the testimony of Avalos and his wife, (2) Diaz's affidavit, and (3) Diaz's letter to the court.

## C.   Rabe Did Not Show That Diaz Was Able and Willing to Testify at Trial

First, we must determine, *based only on the state-court record*, whether that court's decision—that Smith was *not* ineffective for failing to subpoena Diaz or secure his presence at trial—was unreasonable under § 2254(d). We review claims of ineffective assistance of counsel under the two-prong test articulated by the Supreme Court in *Strickland v. Washington*.[9] To obtain habeas relief on that ground, the petitioner must show that: (1) his counsel's performance was deficient, i.e., "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *and* (2) the deficient performance prejudiced the petitioner, i.e., "counsel's errors were so serious as to deprive the defendant of a fair trial."[10] "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

---

[7] 131 S. Ct. at 1398.

[8] *Id.* at 1400 (emphasis added).

[9] 466 U.S. 668 (1984).

[10] *Id.* at 687.

conduct. . . . [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[11]

In Rabe's state post-conviction petition, he alleged that he "advised [Smith] that Jessie Diaz was working with [Rabe] on the day of the robbery and would likely testify on his behalf" and that "[Smith] did not interview [Diaz] or have [him] present to testify at trial." He further alleged that Diaz "would have testified that at the time of the robbery, [Rabe] was doing house repairs. . . . It is therefore likely had [Smith] presented [Diaz] the outcome of the trial would have been different." But, Rabe did not support this claim with any evidence that would establish that, *but for* Smith's deficient performance, Diaz *would* have testified as Rabe's alibi at trial. Instead, the only evidence in the state record regarding this claim was an affidavit from Smith, which stated:

> My recollection is I made numerous attempts to contact these witnesses [including Diaz]. I do have notes in my file that I left messages with these witnesses. These notes are attached to this affidavit. There is also what appears to be a mapsco number of "34N" next to a [Diaz's] name indicating that I looked up this witness's address in an effort to speak to him.
> Although I have no independent recollection of speaking with any of these witnesses, there is not doubt I at least attempted to contact these people.
> Furthermore I spoke to Jay Monych, my investigator on this case, and he specifically recalls that we made attempts to contact the listed witness, Jesse Diaz, on Mohawk Drive.
> There is no doubt in my mind that these witnesses either never called me back or turned out to be of no use to Mr. Rabe's cause.

Rabe's allegations and Smith's affidavit were, therefore, the only evidence before the state court relating to whether Diaz was subpoenaed or could have been present at Rabe's trial.

---

[11] *Id.* at 690.

No. 09-10938

The state trial court specifically addressed Smith's alleged failure "to interview alibi witness [sic] and have them present to testify during trial" and ruled that Rabe had not received ineffective assistance of counsel, explaining that "Mr. Smith asserts he made numerous attempts to contact the witnesses and also spoke with his investigator, Jay Monych, who also made attempts to locate the witnesses. Mr. Smith states that these witnesses did not return counsel's calls and were of no benefit to Applicant."[12] The state trial court ultimately concluded that "Mr. Smith is known to this Court and is found to be trustworthy" and accepted Smith's response to Rabe's unsupported allegations.

Because Rabe produced no evidence that Diaz was in fact able and willing to testify at trial, or even that Smith did *not* attempt to contact or subpoena Diaz as Smith claimed in his affidavit, we cannot say that the state court made an unreasonable determination of the facts in light of the evidence before it. Neither can we say, based on such evidence, that the state court unreasonably applied *Strickland* in concluding that, as to securing Diaz's presence at trial, Smith's performance was not deficient.

### III.  CONCLUSION

For the foregoing reasons, the district court's denial of Rabe's federal habeas corpus application is AFFIRMED.[13]

---

[12] Neither the state appeals court nor the Texas Court of Criminal Appeals specifically considered Smith's performance regarding his alleged failure to subpoena or secure the presence of Diaz at trial. As a result, we can review only the state trial court's finding on that issue.

[13] When a habeas applicant fails to demonstrate on the basis of the state-court record that the state court's adjudication of his claim resulted in a decision "contrary to" or "involv[ing] an unreasonable application" of federal law pursuant to § 2254(d)(1), a writ of habeas corpus shall not be granted, and "our analysis is at an end." *Pinholster*, 131 S. Ct. at 1411 n.20. For that reason, we need not decide whether here the district court should have called Diaz to testify on that claim. We note that we would not have been able to consider such testimony, even if the district court had called Diaz to testify.